## IN THE COURT OF APPEALS OF IOWA

No. 16-0185
Filed December 21, 2016

IN THE MATTER OF L.H.,
Alleged to be Seriously Mentally Impaired,

L.H.,
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Delaware County, Stephanie C. Rattenborg, District Associate Judge.

L.H. appeals the district court's order of continued commitment under Iowa Code chapter 229 (2015). **REVERSED AND REMANDED.**

Leslie M. Blair III of Blair & Fitzsimmons, P.C., Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

L.H. appeals the district associate judge's (DAJ) order of continued outpatient commitment under Iowa Code section 229.14A (2015). While not disputing he suffers from a mental illness, L.H. argues the court's refusal to terminate the commitment was not supported by substantial evidence. We agree the sparse record is insufficient to establish that L.H. continues to lack sufficient judgment to make decisions about his treatment nor does it show any recent overt act indicating he still poses a danger to himself or others. Accordingly, we reverse and remand for termination of L.H.'s commitment.

## I.     Facts and Prior Proceedings

L.H. has been diagnosed with schizoaffective disorder, bipolar type, and has been under court-ordered civil commitment for more than three years, generally on an outpatient basis. In August 2013, his mother and stepfather filed an application alleging L.H. had been responding to auditory hallucinations, calling people on the phone to ask where he was, passing cars on the highway and slowing down in front of them, and repeatedly alleging people were "out to get him." According to his mother, L.H. had not taken his medication in four weeks. Following a hearing, the DAJ ordered L.H. to outpatient commitment. The DAJ "withheld" specific findings of fact pending L.H.'s "compliance with outpatient treatment" at Associates for Behavioral Health in Hiawatha.[1]

In March 2014, the DAJ transferred L.H. to outpatient treatment in Dubuque. L.H.'s periodic report indicated his condition was improving. But five

---

[1] The court's order does not cite authority for "withholding" its findings of fact, and we find none in chapter 229.

months later, the DAJ entered an emergency hospitalization order, detaining L.H. at Mercy Hospital in Des Moines, after receiving information L.H. was "off medication" and having "paranoid and delusional thoughts." On September 3, 2014, the DAJ entered an order committing L.H. to outpatient treatment in Dubuque. Again, the order lacked findings of fact or conclusions of law. On September 4, 2014, the Dubuque provider filed a periodic report opining L.H.'s condition remained unchanged.

In January 2015, L.H. filed a self-represented request to change his treating provider to Abbe Center in Manchester. But before the court ruled on his request, L.H.'s mother and stepfather filed another application alleging serious mental impairment. According to their supporting affidavits, L.H. verbally threatened to harm them and their dog, pushed his mother, and forced his way into their bedroom after they sought refuge from him. The DAJ ordered L.H. to be hospitalized pending hearing on the application. The physician's report filed before the hearing indicated L.H. was "agreeable to taking medications, he has been completely cooperative in the hospital," and "he has shown no violent acts." The physician recommended evaluation on an outpatient basis, reasoning: "If he is not provoked, and continues to take his medication I think he will be safe."

At the February 6, 2015 hearing, L.H. stipulated to the findings and recommendations in the physician's report, and the DAJ ordered L.H. to obtain outpatient treatment at Abbe Center. Over the next ten months, Abbe Center filed four periodic reports indicating L.H.'s condition remained unchanged and recommending continuation of outpatient treatment. The court issued orders continuing L.H.'s commitment following each report.

On December 28, 2015, following the fourth order continuing his commitment, L.H. filed a self-represented motion contesting the court's continued involvement in his medical treatment and requesting termination of his outpatient hospitalization:

> To: Whom It May Concern
> I wish to contest Abbe Center for Community Mental Health decision through the courts. I am keeping all appointments & take medication as prescribed. I believe I do not need the court's supervision anymore. Abbe Center personnel . . . and my counselor from Independence Counseling say I'm doing better than when I first started.
> Sincerely, [L.H.]

The DAJ treated L.H.'s filing as a request for a placement hearing under section 229.14A and scheduled a hearing for January 11, 2016. Three days before the hearing, L.H.'s physician, Dr. Douglas Jones, filed a periodic report checking a box next to the statement, "Respondent is seriously mentally impaired and in need of treatment, and can continue in outpatient treatment" and adding this handwritten notation: "Recommend to continue on commitment for further stabilization." Dr. Jones also stated in the report that "the further length of time the respondent will require outpatient treatment" was "not possible to be determined."

The State offered no testimony or other evidence at the perfunctory January hearing. L.H. provided the court with a letter from his therapist, Carol Ogea, who described L.H. as "medication compliant, stable, and managing his symptoms without conflict or problems in his home, relationships or community,"

but who did not recommend his commitment be terminated.[2]  At L.H.'s request, the DAJ tried to contact Ogea by phone but was unable to reach her.

L.H. also asked to have Dr. Jones cross-examined.  The State responded it "did not anticipate calling anyone simply because the doctor's recommendation is stated in writing twice within the last two months."  The State suggested L.H. could "certainly try to get [the doctor] on the phone" if L.H. wanted to call him as a witness, but the State could not guarantee his availability.  The court declined L.H. the opportunity to attempt to contact Dr. Jones by telephone, reasoning: "He just filed a report Friday . . . saying that he's not recommending closure at this time."

The DAJ told L.H., "I don't think you're going to get what you want today which is the doctor and your therapist to recommend closure.  But they're indicating you're close to that point."  At the hearing, L.H. said he would like to appeal.  The DAJ told him his appeal would be heard by the district court.

Immediately after the hearing, the DAJ filed a written order stating "this matter is NOT terminated at this time.  The court will review in [ninety] days for a physician's report and will terminate this matter upon recommendation of respondent's doctor or therapist."  The DAJ also appointed new counsel for L.H.  That same day, L.H. filed a handwritten notice of appeal, again addressed to "whom it may concern," expressing his desire to appeal from the January 11

---

[2] Instead, L.H.'s therapist suggested "any additional goals and needs of [L.H.] under his court committal be specified so that his therapeutic work cannot only be specific to them but be able to show specific work and progress expected of him under the court order to eventually satisfy the court."

court hearing. The next day, the district court set a hearing on L.H.'s appeal for January 19.

On January 19, the district judge held a de novo trial—ostensibly under section 229.21(3)(c). The district judge issued an order the same day, affirming the DAJ's order for continued outpatient treatment. L.H. filed a notice of appeal from the district judge's order on January 20, 2016, stating he disagreed with "the decision of the courts" and with the diagnosis from his doctor but was "willing to continue treatment and medications on a self-reliant basis."

## II.     Jurisdiction

On appeal, the State raised this question: whether the district court's appellate jurisdiction includes review of a DAJ's order continuing placement in chapter 229 commitment proceedings.[3] After reviewing sections 229.21(3) and 602.6306(2), we concluded the district judge did not have jurisdiction to consider the merits of L.H.'s appeal from the DAJ's ruling. We issued an order finding the district judge's decision was void, and we lacked jurisdiction to entertain L.H.'s challenge to that decision on appeal. But we concluded a challenge to the DAJ's ruling was properly before us. Accordingly, rather than dismissing L.H.'s appeal, we directed the parties to determine what record was available from the proceedings before the DAJ and to submit amended briefs addressing the DAJ's order. Because of the importance of the jurisdictional issue, we recount the analysis that led us to this determination.

---

[3] A court's first duty is to determine if it has jurisdiction to decide a case on its merits. *In re B.T.G.*, 784 N.W.2d 792, 795 (Iowa Ct. App. 2010). A party can raise a challenge to subject matter jurisdiction at any time in the proceedings. *Id.*

Fourteen years ago, our court addressed the question whether a district court could review a DAJ's finding of serious mental impairment. *See In re P.D.*, No. 00-1882, 2002 WL 1127908, at *1 (Iowa Ct. App. May 31, 2002). In *P.D.*, we examined the language of section 229.21(3)(a), which governs appeals to the district court in hospitalization proceedings, and section 602.6306, which discusses DAJ jurisdiction. *See id.* at *1–2. *Compare* Iowa Code § 229.21(3)(a) (providing a respondent may appeal a *magistrate's or referee's* finding of serious mental impairment to the district court), *with id.* § 602.6306(2) (stating DAJs have jurisdiction over involuntary commitment hearings under chapter 229 and while presiding in this subject matter a DAJ shall employ district judges' practice and procedure), *and id.* § 602.6306(4) (stating appeals from judgments or orders of DAJs while exercising any jurisdiction other than the jurisdiction of magistrates shall be governed by the laws relating to appeals from judgments or orders of district judges). In concluding the district court did not have jurisdiction to hear P.D.'s appeal, we reasoned:

> The terms of section 602.6306(2) clearly and unambiguously grant [DAJs] original jurisdiction in chapter 229 hospitalization proceedings. The same provision requires [DAJs] to employ district judges' practices [and] procedures while exercising the granted jurisdiction. Section 229.21(3)(a) is equally unambiguous in its limitation of appeals to the district court from the findings of magistrates and referees.
> Because the [DAJ] here exercised original rather than derivative jurisdiction, we hold [the respondent's] appeal from the resulting order is governed by the laws relating to appeals from judgment or orders of the district court.

*P.D.*, 2002 WL 1127908, at *3 (citation omitted).

We concluded the reasoning in *P.D.* was persuasive authority in L.H.'s appeal. Although L.H. challenged a continued placement order rather than an

initial finding of serious mental impairment, we decided that distinction was inconsequential under chapter 229.[4] *Compare* Iowa Code § 229.21(3)(a), *with id.* § 229.21(3)(d) ("Any respondent with respect to whom the magistrate or judicial hospitalization referee has held a placement hearing and has entered a placement order may appeal the order to a judge of the district court."). Accordingly, because the DAJ exercised original jurisdiction, L.H.'s appeal from the DAJ's ruling was governed by the laws relating to appeals from final orders of the district court, and the district court did not have jurisdiction to consider L.H.'s appeal. *See id.* § 602.6306(2).

Because the district judge's order affirming continued outpatient treatment was void, L.H. could not appeal from that order. *See Yulin Li ex rel. Lee v. Rizzio*, 801 N.W.2d 351, 364 (Iowa Ct. App. 2011) (declining to entertain argument from a void judgment); *see also Wederath v. Brant*, 287 N.W.2d 591, 595 (Iowa 1980) (noting "in retrospect it was unfortunate that we did not dismiss the appeal because there was no valid judgment from which to appeal"). But because L.H.'s attempt to perfect an appeal from the DAJ order was thwarted by the district court's scheduling of a de novo hearing before the district judge, we

---

[4] In its amended brief, the State points out habeas corpus relief under section 229.37 is not available to L.H. because, as an outpatient, he is not confined. *See S.Q. v. St. Anthony Reg'l Hosp.*, No. 10-1293, 2011 WL 3481001, at *4 (Iowa Ct. App. Aug. 10, 2011) (concluding the legislature did not intend word "confined" to apply to individuals committed to outpatient care). The State further asserts because habeas relief is not available to L.H., we cannot cite to *In re M.S.* and likewise rule we "flexibly construe the matter as either a placement hearing or a request for habeas relief." *See* No. 15-1270, 2016 WL 5930454, at *1 (Iowa Ct. App. Oct. 12, 2016). The State does not go on to argue that L.H. cannot appeal from a placement order. As we noted in *M.S.*, section 229.17 suggests a placement order may be appealed by stating in part, "If a respondent appeals to the supreme court regarding a placement order, the respondent shall remain in placement unless the supreme court orders otherwise." *Id.* at *1 n.1 (quoting Iowa Code § 229.17). We now hold a person committed to outpatient treatment may appeal from a placement order.

found L.H. should have an opportunity to appeal based on either his January 11 or his January 20 notice of appeal. *Cf. Tyrrell v. Iowa Dist. Ct.*, 413 N.W.2d 674, 676 (Iowa 1987) (granting defendant—who was tried for an indictable offense but convicted of a simple misdemeanor—an opportunity for a delayed discretionary review where the DAJ misinformed him as to the procedure to be followed in perfecting an appeal).

We liberally construe notices of appeal so as to preserve the right of review and, if possible, permit consideration of the merits. *See Iowa Dep't of Human Servs. ex rel. Greenhaw v. Stewart*, 579 N.W.2d 321, 323 (Iowa 1998) (requiring substantial, not strict, compliance with rule governing notices of appeal). Both notices of appeal were filed by L.H. as a self-represented litigant, and neither specified to which court L.H. was appealing. Instead, both notices were addressed "to whom it may concern." The January 20 notice would have been a timely appeal from the DAJ's January 11 order. And although it specified L.H. wished to appeal "the court's decision that was rendered on January 19, 2016," it also referenced his disagreement with "the decision of the courts." We construed the January 19 notice of appeal broadly to challenge not just the adverse ruling of the district judge but also, implicitly, all adverse rulings in the underlying proceedings, including the DAJ's order. *See In re Guardianship & Conservatorship of Ankeney*, 360 N.W.2d 733, 736 (Iowa 1985) (holding notice of appeal addressing August 8 visitation schedule also incorporated challenge to August 1 order granting visitation and was sufficient to confer jurisdiction on the appellate court). Accordingly, we found our court had jurisdiction to consider

L.H.'s appeal from the DAJ's continuing placement order under either notice of appeal.

But because we had no record of the January 11 hearing and both parties' briefs cited evidence presented at the January 19 hearing before the district judge while addressing whether the district judge's ruling was supported by sufficient evidence, we could not properly address the appeal. Pursuant to an order of this court, a court reporter prepared a transcript of the electronic recording of the January 11 hearing, and the parties submitted new briefs addressing the DAJ's ruling. We now proceed to the merits of L.H.'s argument.

### III. Scope and Standard of Review

"In a placement hearing, the court shall determine a placement for the respondent in accordance with the requirements of section 229.23,[5] taking into consideration the evidence presented by all the parties." Iowa Code § 229.14A(8). We review challenges to the sufficiency of the evidence in involuntary commitments under chapter 229 for correction of legal error. *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). If the findings of fact are supported by substantial evidence, they are binding on us. *See In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *B.T.G.*, 784 N.W.2d at 796.

---

[5] Section 229.23 identifies the rights and privileges of hospitalized persons.

**IV.    Analysis**

Chapter 229 authorizes involuntary civil commitment if a person is "seriously mentally impaired," that is, the person has a mental illness and because of that illness lacks sufficient insight or judgment into the need for treatment and is a danger to the person's self or others.  Iowa Code § 229.1(17).  In the initial commitment proceeding, the applicant bears "the burden of evidence in support of the contentions made in the application" and the presumption is "in favor of the respondent."  *Id.* § 229.12(3)(a).  The definition of serious mental impairment does not become less stringent when a person challenges his or her continued commitment.  *See B.A.A. v. Chief Med. Officer, Univ. of Iowa Hosps. & Clinics*, 421 N.W.2d 118, 124 (Iowa 1988) (addressing patient's habeas corpus petition for release from inpatient placement).  "[T]he legislature meticulously conditioned treatment, whether on an inpatient or outpatient basis, on a finding that the person has a serious mental impairment."  *Id.*  Accordingly, to prolong a person's commitment, all three elements—mental illness, lack of judgment, and dangerousness—must continue to exist.  *Id.*

While *B.A.A.* did not expressly assign the burden of proving the need for a continued commitment under section 229.37, the supreme court implied the chief medical officer, represented by the State, must establish the elements of serious mental impairment.  *See id.* at 126 ("Because there was no showing that [B.A.A.] suffered from a serious mental impairment, the district court correctly terminated his involuntary hospitalization.").  We find the same is true in this case involving continued outpatient placement—the burden of showing the persistence of L.H.'s serious mentally impairment remained with the State.  On appeal, the State does

not balk at that burden, acknowledging "[t]he grounds for serious mental impairment must be satisfied at each periodic review." On appeal, L.H. does not dispute the court's finding of mental illness, but he challenges the sufficiency of the State's proof of both the lack-of-judgment and dangerousness elements.

**Lack of Judgment.** L.H. argues the State failed to prove he lacked insight into his treatment needs because Dr. Jones did not testify at the January 11 placement hearing and "[t]here is no indication of noncompliance with medication in the [c]ourt file, at least since his last hospitalization in February of 2015." The State responds it has met its burden through the periodic physician reports and letter from L.H.'s therapist, which did not recommend terminating the outpatient commitment.[6]

To demonstrate lack of judgmental capacity in a review of a continuing commitment, the State must prove "the person is unable because of the alleged mental illness, to make a rational decision about treatment, whether the decision is to seek treatment or not." *See B.T.G.*, 784 N.W.2d at 797. Here, the State contends: "Earlier reports and court findings indicate a lack of judgmental capacity." The record does not support that contention.

The physician's five reports after the DAJ's February 2015 committal order repeated only that L.H.'s condition was "unchanged." The committal order preceding those reports indicated under the heading "Judgmental Capacity" that

---

[6] The State also argues L.H. failed to preserve error regarding the physician's failure to testify. The State contends: "[L.H.] requested the hearing and wanted the physician to testify, but the record is devoid of indication that [L.H.] arranged for or subpoenaed the physician himself." The State does not explain why this creates an error-preservation problem. L.H. does not contend he was denied due process because of his inability to examine the physician; he mentions the physician's failure to testify only in support of his argument the State failed to present sufficient evidence to support L.H.'s continued commitment. We find L.H. has sufficiently preserved error here.

L.H. "stipulated to findings and recommendations in [the] physician's report." But the corresponding physician's report indicated L.H. was "capable of making responsible decisions with respect to [his] hospitalization or treatment" and was "agreeable to taking medications." And although L.H. has some history of going off his medications, the last report that he had failed to take his prescriptions came in August 2014, more than a year before his request for a placement review. While L.H.'s providers did not recommend terminating his commitment, implicitly suggesting L.H. lacked capacity, our record is devoid of any explanation for such opinions. Accordingly, we conclude the record does not support a finding that L.H. lacked judgmental capacity.

**Dangerousness.** We also find insufficient proof that L.H. currently presents a danger to himself or others because the State did not offer evidence of any "recent overt act" at the January 11, 2016 hearing. *See In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986) (holding dangerousness element requires proof of a "recent overt act, attempt or threat"). An "overt act" is "past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury." *In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988). The State asserts the real focus of the recent-overt-act requirement is on the risk of future dangerousness. *See Mohr*, 383 N.W.2d at 542 (noting dangerousness component "requires a predictive judgment, 'based on prior manifestations but nevertheless ultimately grounded on future rather than past danger'" (citation omitted)). The State argues the reason L.H. has not committed an overt act in the past year is because he has been court-ordered to remain in treatment.

The court's ability to predict future dangerousness must be based on the respondent's prior manifestations of aggressive behavior or threats. *See Foster*, 426 N.W.2d at 377–78 (explaining importance of evidence of past conduct to support a predictive finding of dangerousness). To support an accurate prediction of dangerousness, the prior manifestations must not be too remote in time. *See In re S.S.*, No. 15-0494, 2015 WL 6508809, at *5 (Iowa Ct. App. Oct. 28, 2015) (finding dangerousness element was not satisfied when the last overt act occurred approximately six months before hearing). We acknowledge the benefit of maintaining an incentive for L.H.'s compliance with his court-ordered medication, but the statutory scheme established by the legislature does not free the State from the responsibility to show a recent overt act.

The record before us does not include substantial evidence of a recent overt act, attempt, or threat. The last overt act occurred in February 2015, nearly one year before L.H.'s placement review, and no treating provider opined specifically on L.H.'s dangerousness either through testimony or medical report. *See In re L.E.B.,* No. 14-0989, 2015 WL 7575399, at *4 (Iowa Ct. App. Nov. 25, 2015) (finding insufficient evidence to establish dangerousness when "person who completed the preprinted physician's report wrote 'yes' in response to a question regarding dangerousness, [but] the person completing the report did not provide any information supporting the conclusion").

Because the evidence in the record does not support of a finding that L.H. lacks judgmental capacity or is presently dangerous, we reverse and remand for termination of L.H.'s outpatient commitment.

**REVERSED AND REMANDED.**