# IN THE COURT OF APPEALS OF IOWA

No. 17-0449
Filed May 2, 2018

**IN THE MATTER OF J.R.,**
**Alleged to be Seriously Mentally Impaired.**

**J.R.,**
    Respondent-Appellant.

_____

    Appeal from the Iowa District Court for Marshall County, Timothy J. Finn, Judge.

    J.R. appeals the order denying his writ of habeas corpus to vacate and set aside his involuntary commitment. **AFFIRMED.**

    Merrill C. Swartz of Swartz Law Firm, Marshalltown, for appellant.

    Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant Attorney General, for appellee State.

    Considered by Tabor, P.J., McDonald, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**CARR, Senior Judge.**

J.R. has been under commitment as a person with a serious mental impairment since 2004. In 2012, this court affirmed an order continuing his commitment. *See In re J.R.*, No. 11-1180, at *1 (Iowa Ct. App. Feb. 15, 2012). J.R. now appeals the order denying his writ of habeas corpus to vacate and set aside his involuntary commitment. *See* Iowa Code § 229.37 (2016) (stating that a person who is confined for serious mental impairment may challenge continued involuntary commitment by writ of habeas corpus). He contends there is insufficient evidence that he is seriously mentally impaired.

We review claims relating to the sufficiency of the evidence in involuntary commitment proceedings for errors at law. *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). The burden of proving serious mental impairment is by clear and convincing evidence. *See id.* Clear and convincing evidence "means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* (citation omitted). The district court's finding that J.R. is seriously mentally impaired is binding on us if supported by substantial evidence. *See* Iowa R. App. P. 6.904(3)(a). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *In re L.H.*, 890 N.W.2d 333, 339 (Iowa 2016) (citation omitted).

The court's inquiry in a habeas corpus proceeding is the same as in an original commitment order under chapter 229 for someone who is seriously mentally impaired. *See B.A.A. v. Chief Med. Officer, Univ. of Iowa Hosps. &*

*Clinics*, 421 N.W.2d 118, 125 (Iowa 1988). Chapter 229 defines "seriously mentally impaired" or "serious mental impairment" as

> the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

Iowa Code § 229.1(20).

J.R. has been diagnosed with schizophrenia and obsessive compulsive disorder. He does not dispute the finding that he is a person with mental illness. He instead argues the evidence does not support the district court's findings that he lacks sufficient judgment to make responsible decisions as to his treatment and that he is likely to injure himself or others if allowed to remain at liberty without treatment.

The evidence presented at the hearing came primarily from Dr. Douglas Steenblock, who is board certified in psychiatric medicine and has been treating J.R. for more than ten years. Dr. Steenblock opined that J.R. is still seriously mentally impaired and, if not under commitment, J.R. would not provide proper care for himself and would be likely to injure himself or others.

J.R. argues the district court reached its finding that he presents a danger to himself or others based on acts that occurred in or around 2010. Dr. Steenblock testified as to these acts to explain J.R.'s behavior when not taking medication.

Dr. Steenblock testified that J.R. now takes an antipsychotic medication that alleviates many of the symptoms of schizophrenia. However, before J.R. began taking the medication, Dr. Steenblock observed that J.R. showed many positive psychotic symptoms and that his behavior was escalating. Dr. Steenblock testified that prior to his commitment, J.R. "was very angry and irritable," made "statements that implied that he might assault someone if they provoked him," and made specific threats to individuals based on his paranoid beliefs that they were trying to harm him. In addition to his violent propensities, Dr. Steenblock explained that when J.R. was not taking antipsychotic medication, there "was concern that he was losing weight and malnourished. His hygiene was extremely poor. He refused medical interventions like physical examinations or laboratories."

Although J.R. has not exhibited the symptoms that made him a threat to himself or others since he began taking his medication, Dr. Steenblock explained that J.R.'s symptoms would return if he stopped taking the medication. Dr. Steenblock explained that J.R.'s obsessive compulsive disorder causes recurrent obsessions about his medication, which negatively affects J.R.'s willingness to take it. Based on past experiences, Dr. Steenblock testified that if J.R. were to stop taking his medication, "within a short time he would revert back to his previous state of being very delusional and probably quite agitated. And I think this would not only result in potential aggressive behavior but also a lot of self-neglect." Although these behaviors are not currently occurring and have not occurred in some time, the evidence shows they are likely to occur again if J.R.'s commitment was not continued. As Dr. Steenblock opined, "[I]f [J.R.] was no longer compelled

by the court to participate in treatment and take medication, I am certain he would become a danger to himself or others."

J.R. also notes that Dr. Steenblock testified J.R. is not a threat to himself or others while he is taking his medication. However, J.R. testified at the hearing that if he was not under commitment, he would discontinue taking his medication. This statement of intent is evidence of both a lack of judgment and of a current overt act supporting the proposition he is a current danger to himself or others if not under commitment and so required to take his medication. *See In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986). Although J.R. cites potential side effects as a reason to stop taking his medication, the hospital closely monitors these side effects.

Dr. Steenblock provided ample evidence that J.R. lacks the necessary judgment to make responsible decisions with respect his treatment and that he would be a danger to himself or others if he was no longer under commitment. Because substantial evidence supports the court's finding that J.R. is seriously mentally impaired, we affirm the order denying J.R.'s writ of habeas corpus.

**AFFIRMED.**