# IN THE COURT OF APPEALS OF IOWA

No. 19-0560
Filed December 18, 2019

**IN THE MATTER OF K.G.,**
**Alleged to be Seriously Mentally Impaired,**

**K.G.,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi

Wittig, Judge.

K.G. challenges the civil commitment order issued under Iowa Code

chapter 229 (2019). **AFFIRMED.**

Francis J. Lange, Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Gretchen Kraemer, Assistant

Attorney General, for appellee State.

Considered by Bower, C.J., and Potterfield and Greer, JJ.

**POTTERFIELD, Judge.**

K.G. challenges the district court's order affirming the magistrate's civil commitment order issued under Iowa Code chapter 229 (2019). On appeal, K.G. argues (1) the State failed to meet its burden to prove by clear and convincing evidence that she was a danger to herself or others due to her mental illness; (2) the district court erred in not appropriately conducting a de novo hearing under Iowa Code section 229.21(3); and (3) the district court erred by taking judicial notice of two criminal complaints involving K.G. in violation of K.G.'s rights under the Fifth Amendment to the United States Constitution.

## I. Background

K.G. was involuntarily hospitalized following an altercation between herself and her husband on February 24, 2019. In the days before the incident, K.G.'s family had noticed an alarming change in K.G.'s behavior. She was "constantly agitated and irrational" and had started using vulgar and racist language in public. She had also become paranoid and believed most of her family was conspiring against her. K.G.'s family tried to convince her to seek treatment for several days before the altercation. K.G. had refused.

The police report describes the February 24 incident. K.G.'s husband and son were on the phone with K.G.'s sister discussing what to do about K.G. K.G. heard their conversation and became upset. She entered the room and slapped her husband in the chest. The three went into the hallway outside the room, where K.G. grabbed a lamp from a stand and tried to hit her husband with it, only to be stopped by her son. K.G. then struck her husband with either a cane or a grabbing tool. K.G.'s husband then went outside the house to call the police.

K.G. followed him out and tried to hit him with a glass vase but was once again stopped by her son. The police arrived soon after. The police report notes K.G. "was making circular statements about her dislike for her husband and how he is trying to poison her" when she was taken into custody.

K.G. was at first committed to a forty-eight hour hold at the local hospital but became "too difficult to handle" for hospital staff and was moved to jail. She denied anything was wrong with her and refused medication and treatment. K.G. was eventually examined by the psychiatrist Dr. Lee Berman on March 1. Dr. Berman diagnosed K.G. with "bipolar type one most recent episode mania with psychotic features."

K.G.'s sister filed an application for involuntary hospitalization on February 26. The hearing on the application occurred on March 1, after K.G. was examined by Dr. Berman. Dr. Berman, K.G.'s sister, K.G.'s father, and K.G. all testified at the hearing. Dr. Berman testified K.G. could not make responsible decisions for her treatment and that she needed to remain at the hospital "[u]ntil stable" and noted she would likely be able to move to outpatient treatment within a week. When asked by the magistrate about whether K.G. was dangerous, Dr. Berman stated, "Well, if she—if she wasn't in a stable environment and she could become worse and more agitated while she's here if we don't treat this. So there is a possibility of that." He added K.G.'s condition was "[s]omething that if you don't treat will continue to get worse."

K.G.'s sister testified that K.G. had told her, "It has taken all the strength in me not to kill myself." K.G.'s father testified K.G. then backtracked on that statement, saying that she has corrected herself to mean, "I'd really like to kill

[her husband]" and not herself. Both testified K.G. was paranoid and uncharacteristically vulgar in the days before the February 24 incident. K.G. testified last. She insisted her sister was "very, very, very controlling" and believed her husband was "not only controlling my mind" but was also controlling "my son's mind, my family's mind because he can do it."

After hearing this testimony, the magistrate found K.G. to be seriously mentally impaired and ordered her involuntary hospitalization. K.G. filed a notice of appeal and requested a hearing on March 6; a de novo review hearing took place on March 29. At the hearing, K.G.'s sister and father testified. Dr. Berman did not testify but submitted a March 13 progress report to the district court. Over K.G.'s objection, the district court took notice of the criminal complaints against K.G. The district court affirmed the magistrate, noting

> [K.G.] has now received medications and treatment that permitted her to be released to outpatient care. She presented with danger to self or others in the form of her threats to kill her spouse, the allegations that resulted in her arrest concerning striking him, holding a knife to her wrist and indicating it was taking all the strength she had not to kill herself.

K.G. appeals.

## II. Standard of Review

"We review challenges to the sufficiency of the evidence in involuntary commitment proceedings for errors at law." *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). "If the findings of fact are supported by substantial evidence, they are binding on us." *In re L.H.*, 890 N.W.2d 333, 339 (Iowa Ct. App. 2016). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *In re. B.T.G.*, 784 N.W.2d

792, 796 (Iowa Ct. App. 2010). "Clear and convincing evidence is less burdensome than evidence establishing proof beyond a reasonable doubt, but more burdensome than a preponderance of the evidence." *B.B.*, 826 N.W.2d at 428. "It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998).

### III. Discussion

#### a. Error Preservation

We first address the State's error preservation argument. The State argues K.G. failed to preserve error on all her arguments related to the district court's alleged procedural deficiencies when conducting its de novo review except her objection to the court's consideration of the two criminal complaints against K.G. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). If the district court was asked to rule on an issue but failed to do so, the moving party must file another motion to ask the district court to rule on the issue. *Lamasters v. State*, 821 N.W.2d 856, 863 (Iowa 2012). The error preservation rule, however, "is not concerned with the substance, logic, or detail in the district court's decision. If the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." *Id.* at 864 (quoting *Meier*, 641 N.W.2d at 540).

The district court's review hearing was not recorded or reported. On appeal, the district court approved a joint statement of the record of the review

hearing under Iowa Rule of Appellate Procedure 6.806. The district court also attached its notes from the proceeding to its order approving the joint statement.

After reviewing these documents and the district court's order affirming the magistrate's findings, we conclude K.G. has not preserved error on her constitutional argument or her argument related to the lack of physician testimony. According to the records, the only objection raised was to the district court's taking judicial notice of the two criminal complaints against K.G. The ruling does not indicate K.G. objected to the omission of the physician's testimony or argued taking judicial notice of the two criminal complaints violated her rights under the Confrontation Clause of the Fifth Amendment to the United States Constitution. As a result, we decline to address those arguments for the first time on appeal. *See Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 322 (Iowa 2013) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

### b. Procedural Deficiencies

K.G. argues the district court erred by considering the two criminal complaints against her, which she contends were inadmissible hearsay. But chapter 229 provides that the district court "shall receive all relevant and material evidence which may be offered and need not be bound by the rules of evidence." Iowa Code § 229.12(3)(a). The district court did not err by considering the criminal complaints at the de novo hearing.

Next, K.G. argues the district court did not apply the correct standard of review at the hearing. *See id.* § 229.21(3)(c) ("When appealed, the matter shall stand for trial de novo."). K.G.'s entire argument is one sentence long, points to

no authority in support of her position, and rests on the rule 6.806(1) statement of the proceedings, which described how the district court apparently noted the only issue before the court was "whether sufficient evidence supports the magistrate's commitment order." We do not find K.G.'s assertion persuasive. Elsewhere in the court's order on appeal, the district court repeatedly notes the magistrate's determination was reviewed de novo. The court also wrote that the hearing was de novo on the court's own handwritten notes from the hearing. The court did not limit its consideration to the record presented to the magistrate. The district court's review included all of the evidence presented de novo.

### c. Sufficiency of the Evidence

K.G. alleges the determination that she is seriously mentally impaired is not supported by substantial evidence. Chapter 229 defines "serious mental impairment" as

> the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.

Iowa Code § 229.1(20). The definition has essentially three elements—"mental illness, lack of judgment, and dangerousness." *L.H.*, 890 N.W.2d at 340. Each element must "continue to exist" throughout the person's commitment even if the person is undergoing inpatient or outpatient treatment. *Id.*

On appeal, K.G. only challenges the dangerousness element.[1] "This element requires a predictive judgment, 'based on prior manifestations but nevertheless ultimately grounded on future rather than past danger.'" *In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980) (quoting Randall P. Bezanson, *Involuntary Treatment of the Mentally Ill in Iowa: The 1975 Legislation*, 61 Iowa L. Rev. 261, 304 (1975)). The threat of harm must be "probable or reasonably to be expected," *id.* at 801, and must "be evidenced by a 'recent overt act, attempt or threat.'" *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986) (quoting *Stamus v. Leonhardt*, 414 F. Supp. 439, 451 (S.D. Iowa 1976)). An overt act is "past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury." *In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988). And "[t]o support an accurate prediction of dangerousness, the prior manifestations must not be too remote in time." *L.H.*, 890 N.W.2d at 341. On appeal, K.G. argues (1) her statements about wanting to kill herself and her husband were not threats of violence and (2) even if they were, there is insufficient evidence to establish K.G. was dangerous on the day of the March 29 hearing. Because we conclude sufficient evidence supports the district court's finding of dangerousness even

---

[1] The parties disagree whether K.G. has appealed the sufficiency of evidence of lack of judgment. The State's brief claims K.G. "does not argue that she has judgmental capacity." K.G. disputes this claim in her reply brief. After reviewing K.G.'s appellate brief, we conclude she has not raised lack of judgment on appeal. K.G. mentions lack of judgment in her appellate brief, but does not cite to case law or otherwise explain why the evidence presented is insufficient to show K.G. lacked judgment. *See* Iowa R. App. P. 6.903(2)(g) ("The argument section . . . . shall include . . . (3) An argument containing the appellant's contentions and the reasons for them with citations to the authorities relied on . . . . Failure to cite authority in support of an issue may be deemed waiver of that issue.").

without considering K.G.'s statements before the March 1 hearing, we need not address K.G.'s first argument.

In general, cases in which we have concluded the prior overt acts were remote dealt with significantly longer gaps than here. *See, e.g.*, *id.* (concluding insufficient evidence to support a finding of dangerousness where the overt acts occurred "nearly one year before" the placement review hearing); *In re S.S.*, No. 15-0494, 2015 WL 6508809, at *5 (Iowa Ct. App. Oct. 28, 2015) (six-month gap). But events occurring nearly two months before review hearings have been considered recent to determine dangerousness under chapter 229. *See In re B.T.G.*, 784 N.W.2d 792, 798 (Iowa Ct. App. 2010) (considering threats made in March 2009 evidence of overt acts sufficient to support a finding of dangerousness at a May 2009 review hearing); *In re C.I.T.*, No. 16-0278, 2016 WL 4036244, at *1 (Iowa Ct. App. July 27, 2016) (affirming a prisoner's January 2016 civil commitment order based on "a physical altercation with another inmate in November of 2015" and threats against prison staff that same year).

Having concluded the evidence gathered at the March 1 hearing is recent enough to support a finding of dangerousness at the March 29 de novo hearing, we must now decide whether there is sufficient evidence of recent overt acts to support a finding of dangerousness. We conclude there is. As detailed above, the criminal complaint described several acts of violence and attempted acts of violence committed by K.G against her husband in the days before the March 1 hearing. At the March 1 hearing, Dr. Berman noted that, while K.G. had not been violent at the hospital, "she could become violent" if her paranoia is not treated. Dr. Berman also stated K.G. had refused to take medication, and that he

believed involuntary medication was necessary if K.G. continued to refuse medication. This evidence is sufficient to support the district court's finding that K.G. is likely to injure herself or others if allowed to remain at liberty without treatment.

**AFFIRMED.**