# IN THE COURT OF APPEALS OF IOWA

No. 19-1888
Filed June 3, 2020

IN THE MATTER OF L.H.,
**Alleged to Be Seriously Mentally Impaired,**

**L.H.,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Lee (North) County, Ty Rogers, District Associate Judge.

Appellant appeals the district court decision finding he was seriously mentally impaired. **AFFIRMED.**

William Monroe, Burlington, for appellant.

Thomas J. Miller, Attorney General, and Gretchen Kraemer, Special Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**PER CURIAM**

L.H. appeals the district court decision finding he was seriously mentally impaired. We conclude there is substantial evidence in the record to support the district court's finding that without treatment L.H. would likely inflict serious emotional injury on individuals who lacked a reasonable opportunity to avoid contact with him.

### I.      Background Facts & Proceedings

L.H. is in prison on a charge of first-degree murder and is serving a life sentence. On February 21, 2013, prison personnel filed an application for an order of involuntary hospitalization. The application stated L.H. had assaulted staff members and had been writing sexually inappropriate and threatening letters. L.H. exposed himself and masturbated in front of staff. A psychological report at that time stated L.H. had escalating behavior, "from verbal threats to sexual letters and harassments to even threats of graphic violence to the same staff he wants to sexually assault."

L.H. was diagnosed with schizophrenia and delusional disorder, erotomanic type. He was determined to be seriously mentally impaired and that status has continued. He was prescribed medication for his condition.

On October 8, 2019, a periodic report was filed by Dr. Gregory Keller, a psychiatrist, which stated L.H. remained seriously mentally impaired. The report stated L.H. had "many cycles of increased hyper-sexuality and then periods of stability where it is contained to just letter writing." L.H. sent letters to the health services director "to try and plead his case that he does not need medications or civil commitment, but in those he diverts into veiled threats and made inappropriate

sexual comments." L.H. continued to attempt to send sexually graphic letters to women. Dr. Keller stated, "I continue to recommend civil commitment for the ability to medicate and treat [L.H.'s] symptoms, and to have the ability to hold him accountable for taking the medications. Without treatment, he is a direct danger/threat to others emotionally and potentially physically."

A hearing was held on October 18. Dr. Keller testified the sexually graphic letters sent by L.H. were "disturbing" to the people who received them. L.H. sometimes left his place of assignment to attempt to personally deliver the letters, and Dr. Keller stated "if he's somewhere [and] he gets out of sight from someone, it could be potentially dangerous." Dr. Keller testified L.H. "ha[d] not actually harmed anybody else other than the emotional trauma that these letters and these activities can produce." He stated the letters, exposure, and masturbation made staff members "feel very uncomfortable and unsafe where they're working, not knowing if there is going to be activity." Dr. Keller stated the letters were precursors to further behavior.

The district court found L.H. had been diagnosed with a mental illness, his condition could be improved with medication, but L.H. would not voluntarily take medication without court intervention. The court determined that without treatment, L.H. "would be likely to inflict serious emotional injury on individuals who lack reasonable opportunity to have contact with him." The court stated:

> Openly exposing himself to staff members or openly masturbating in front of those who cannot avoid contact clearly would have great potential to inflict serious emotional injury on them. Additionally, the Respondent has attempted to send uninvited letters to unknowing recipients that are highly graphic and sexual in nature. . . . A person who receives such letter and reads it unaware of the Respondent's

> history or proclivity is very likely to be seriously emotionally disturbed by such a letter.

The court concluded L.H. remained seriously mentally impaired. L.H. appeals the court's decision.

## II.     Standard of Review

Challenges to the sufficiency of the evidence in involuntary commitment proceedings are reviewed for the correction of errors at law. *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). An allegation of serious mental impairment must be proven by clear and convincing evidence. Iowa Code § 229.13(1) (2019). "Clear and convincing evidence is less burdensome than evidence establishing proof beyond a reasonable doubt, but more burdensome than a preponderance of the evidence." *B.B.*, 826 N.W.2d at 428. "It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* (citation omitted).

While the elements of serious mental impairment must be established by clear and convincing evidence, the district court's factual findings are binding on appeal if they are supported by substantial evidence. *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.*

## III.     Merits

In order to be considered seriously mentally impaired under section 229.1(20), there must be clear and convincing evidence the respondent (1) has a mental illness; (2) lacks "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment"; and (3) is "likely, if allowed to

remain at liberty, to inflict physical injury on 'the person's self or others,' to inflict serious emotional injury on those close to the person, or to be unable to satisfy the person's physical needs."  Iowa Code § 229.1(20).  Section 229.1(20) now also includes a fourth category, "a lack of compliance with treatment."[1]  *Id.* § 229.1(20)(d).

The State's burden to show a person is seriously mentally impaired "does not become less stringent when a person challenges his or her continued commitment." *In re L.H.*, 890 N.W.2d 333, 340 (Iowa Ct. App. 2016).  "Accordingly, to prolong a person's commitment, all three elements—mental illness, lack of judgment, and dangerousness—must continue to exist." *Id.*

On appeal, L.H. does not dispute the court's findings that he has a mental illness and lacks "sufficient judgment to make responsible decisions with respect

---

[1]  Iowa Code section 229.1(20) provides:
> "Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.
> d. Has a history of lack of compliance with treatment and any of the following apply:
> (1) Lack of compliance has been a significant factor in the need for emergency hospitalization.
> (2) Lack of compliance has resulted in one or more acts of serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

to the person's hospitalization or treatment." *See* Iowa Code § 229.1(20). He challenges only the district court's finding that he was likely to inflict serious emotional injury on those who lacked a reasonable opportunity to avoid contact with him if he was not treated for his mental illness. *See id.* § 229.1(20)(b). He asserts the State did not present clear and convincing evidence to show he was likely to inflict serious emotional injury on others.

The term "serious emotional injury" is defined as "an injury which does not necessarily exhibit any physical characteristics, but which can be recognized and diagnosed by a licensed physician or other mental health professional and which can be causally connected with the act or omission of a person who is, or is alleged to be, mentally ill." *Id.* § 229.1(19). We consider whether there is substantial evidence in the record to show a person is likely to inflict serious emotional injury on others who cannot avoid contact with the person if the person is allowed to remain without treatment. *See In re C.D.*, No. 16-1491, 2017 WL 706389, at *3 (Iowa Ct. App. Feb. 22, 2017).

The term "likely" means "probable or reasonably to be expected." *In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980). "This element requires a predictive judgment, 'based on prior manifestations but nevertheless ultimately grounded on future rather than past danger.'" *Id.* (citation omitted). The threat the patient poses must "be evidenced by a 'recent act, attempt, or threat.'" *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986).

We previously stated, "Emotional injury is not precisely delineated, but it would include, for example, serious disruption of family relations leading to depression or nervous breakdown of family members, physical violence on the part

of others, or medically diagnosable complications." *In re J.K.*, No. 15-1621, 2016 WL 3002811, at *5 (Iowa Ct. App. May 25, 2016) (quoting Randall Bezanson, *Involuntary Treatment of the Mentally Ill in Iowa: The 1975 Legislation*, 61 Iowa L. Rev. 262, 302 (1975)). A finding that a person will cause emotional trauma to others is not sufficient to show serious emotional injury. *J.P.*, 574 N.W.2d at 344. However, the trial court in the instant case made a finding that those individuals that were unable to avoid contact with the respondent were likely to suffer serious emotional injury, more than a finding of emotional trauma. Based on our careful review of the record, we agree that substantial evidence supports this finding.

Dr. Keller testified L.H.'s sexually graphic letters were "disturbing" to the people who received them and caused "emotional trauma." When asked to describe the emotional harm L.H. had caused, Dr. Keller stated,

> With staff members that have been targeted, we have, like I've seen, have to, you know, they avoid working. They have to change their patterns and routines to not be in the area where he is.
> It's, you know, it makes them feel very uncomfortable and unsafe where they're working, not knowing if there is going to be activity.
> We've had, you know, with other—in our—the nature of our environment, there have been staff assaults and actual staff sexual assaults so it is something that, especially female staff, are very worried about.
> So when we have this sexualized, sexually-charged and targeted sexual material, it makes it a very uncomfortable environment for the unsuspecting staff or even staff that has repeatedly told him and know him and expect and have seen this stuff, it still makes it an uncomfortable environment.

Dr. Keller testified that staff who come into contact with L.H., either through sexually graphic letters, or while he was exposing himself or masturbating, found his conduct "disturbing." The staff members were uncomfortable to the point they avoided working near him. L.H.'s conduct caused staff members at the prison to

feel unsafe. In particular, L.H. targeted some female staff members. He had written down the license plate numbers of some staff members. Also, he left his place of assignment to personally deliver sexually graphic letters to some staff members. The prison staff could not avoid contact with L.H. because their jobs required them to interact with him.

We conclude there is substantial evidence in the record to support the district court's findings that "[w]ithout Court required treatment, the Respondent would be likely to inflict serious emotional injury on individuals who lack reasonable opportunity to avoid contact with him." We do not require evidence that a person has already caused a medically-diagnosed serious emotional injury, but consider whether it is likely the person will cause a future injury. *In re S.S.*, No. 04-1293, 2005 WL 724514, at *3 (Iowa Ct. App. Mar. 31, 2005). The testimony of Dr. Keller, a psychiatrist, supported a finding this was a likely future result of L.H.'s conduct if he remained without treatment. The evidence shows L.H. engaged in recent overt acts of making "veiled threats" and writing sexually explicit letters, which were seen as a precursor to further escalating behavior.

We affirm the district court's decision finding L.H. was seriously mentally impaired.

**AFFIRMED.**