# IN THE COURT OF APPEALS OF IOWA

No. 22-0919
Filed November 17, 2022

**IN THE MATTER OF D.R.,**
**Alleged to Be Seriously Mentally Impaired,**

**D.R.,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Johnson County, Paul D. Miller,

Judge.

        D.R. appeals the determination he is seriously mentally impaired.

**AFFIRMED.**

        David R. Fiester, Cedar Rapids, for appellant.

        Thomas J. Miller, Attorney General, and Chandlor Collins, Assistant

Attorney General, for appellee State.

        Considered by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

D.R. appeals his involuntary commitment for serious mental impairment,[1] arguing he does not meet the statutory criteria—specifically claiming he has sufficient judgment to make responsible treatment decisions and does not present a danger to himself or others.  We affirm because substantial evidence supports the district court finding D.R. is seriously mentally impaired.

**I. Background.**

Iowa Code chapter 229 provides for the hospitalization of persons with mental illness—both voluntary and involuntary.  Involuntary commitment occurs after a third party files a verified application with specific criteria and a

---

[1] A serious mental impairment is defined as follows:
> [T]he condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
>
> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
>
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
>
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.
>
> d. Has a history of lack of compliance with treatment and any of the following apply:
>
> (1) Lack of compliance has been a significant factor in the need for emergency hospitalization.
>
> (2) Lack of compliance has resulted in one or more acts causing serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

Iowa Code § 229.1(20) (2022).

hospitalization hearing is held for the hospitalization referee to evaluate the necessity of involuntary commitment. Iowa Code §§ 229.6, .12

> The application shall:
>     a. State the applicant's belief that the respondent is a person who presents a danger to self or others and lacks judgmental capacity due to either of the following:
>     (1) A substance-related disorder as defined in section 125.2.
>     (2) A serious mental impairment as defined in section 229.1.
>     b. State facts in support of each belief described in paragraph "a".
>     c. Be accompanied by any of the following:
>     (1) A written statement of a licensed physician or mental health professional in support of the application.
>     (2) One or more supporting affidavits otherwise corroborating the application.
>     (3) Corroborative information obtained and reduced to writing by the clerk or the clerk's designee, but only when circumstances make it infeasible to comply with, or when the clerk considers it appropriate to supplement the information supplied pursuant to, either subparagraph (1) or (2).

*Id.* § 229.6(2).

D.R. has schizophrenia requiring medication, a history of delusions and hallucinations causing paranoia, and a substance-abuse disorder. He was involuntarily committed in November 2021 following acute hallucinations and seeking medical attention for alleged stings and bites from a scorpion infestation. D.R. filed an incoherent public safety report alleging the murder of a family member, he saw her body under a porch, and someone blamed him for the stabbing. In early December, D.R.'s medical treatment improved his condition and abated the danger he posed to himself and others. As a result, he was transitioned to an outpatient clinic.

In late December, D.R. attempted suicide by overdose and reported more hallucinations of harm to himself and family members. D.R. was returned to

inpatient commitment. A placement hearing in January 2022 found D.R. struggles outside inpatient treatment and poses a danger to himself from self-medication. He remained in an inpatient commitment. D.R.'s involuntary commitment was continued in February, and he transferred to a residential facility with a lesser degree of supervision. In March, the hospitalization referee considered whether to continue D.R. with inpatient treatment. The referee found D.R. had improved his judgmental capacity but needed more time in a supervised facility, noting poor compliance with oral medication, and found D.R. posed a danger to himself based on recent self-harm and substance abuse when unsupervised.

D.R. appealed the March order to the district court. The court tried the matter anew, hearing testimony from D.R.'s treating provider at the residential facility and from D.R. *See id.* § 229.21. The weekend before his district court hearing, D.R. threatened to take the steering wheel while a staff member was driving and made threats to harm staff and their families.

During the judicial review hearing, the provider testified about D.R.'s claims of poison and spiders in his room at the facility and his trips to the emergency room related to those claims. She opined D.R. was likely to become noncompliant with medication and noted his current delusions occurred after his psychiatric medication dose was decreased at D.R.'s request. D.R. threatened "to come after" one staff member in the facility, and the provider believed he would still be a risk of harm to himself if released to the community. During his testimony, D.R. claimed facility staff were sabotaging him by putting a venomous spider nest and poison in his room. He said the staff member who reported him pulling the wheel was lying and would not let him use the bathroom.

On May 5, the court ruled clear and convincing evidence established D.R. was seriously mentally impaired, lacked judgment to make responsible medical decisions, and was "likely to physically injure himself or others if allowed to remain at liberty without treatment." Thus, the court continued D.R.'s involuntary commitment.

D.R. appeals the district court's ruling.

## II. Standard of Review.

We review sufficiency-of-the-evidence challenges in involuntary commitments for errors at law. *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). "If the findings of fact are supported by substantial evidence, they are binding on us." *In re L.H.*, 890 N.W.2d 333, 339 (Iowa Ct. App. 2016). "The allegations made in an application for involuntary commitment must be proven by clear and convincing evidence." *B.B.*, 826 N.W.2d at 4289. This "means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.*

## III. Analysis.

*Placement.* D.R. notes in his brief that after the district court's ruling, he was transferred to a hospital with a higher level of care and supervision. He then objects generally to "this placement and the need for an involuntary commitment." If D.R. is objecting to his new placement, it occurred after the district court order was issued, and is outside the record for our review. Any argument against placement at the residential facility is moot as D.R. is no longer committed at that

facility.[2] *See S.Q. v. St. Anthony Reg'l Hosp.*, No. 10-1293, 2011 WL 3481001, at *1 (Iowa Ct. App. Aug. 10, 2011) ("An appeal 'is moot if it no longer presents a justiciable controversy because [the contested issue] has become academic or nonexistent.'" (alteration in original)).

*Serious mental impairment.* Concerning the court's May 5, 2022 ruling confirming the referee's finding D.R. remains seriously mentally impaired, D.R. challenges the district court's findings on the elements of his judgmental capacity and that he presents a danger to himself or others.

*Judgmental capacity.* In March, the referee found D.R. had improved but needed more time in a supervised setting. Shortly thereafter, D.R.'s dose of medication was reduced at his request,[3] resulting in a significant increase in symptoms, including hallucinations and delusions of poison and venomous spiders in his room. D.R. resisted increasing his dose again despite the hallucinations. During his testimony to the court, D.R. accused the facility staff of sabotaging him, lying, trapping him, and placing black widow spiders in his room.

Clear and convincing evidence establishes D.R. lacked sufficient judgment to make responsible decisions regarding his hospitalization and treatment for his mental illness.

*Dangerousness.* The dangerousness element requires "a recent overt act, attempt, or threat." *B.B.*, 826 N.W.2d at 433. The referee found D.R. was unable

---

[2] Moreover, part of D.R.'s argument in favor of judgmental capacity was his willingness to stay at the residential facility on a voluntary basis as he finished a training program.

[3] D.R. had told the referee the higher dose left him "sleepy and feeling doped." His dose was reduced by a doctor at the local hospital.

to live safely on his own given his recent overdose and substance abuse and "would soon be unable to meet his daily needs" if released. In the treatment provider's March report to the court, she noted D.R. "threatens to harm others" and mentioned a history of making verbal threats of harm to staff and family. The hospital requested the judicial review hearing occur over the telephone after D.R. threatened staff and tried to take the wheel from a staff member during transportation back from the hospital. The provider's May report to the court noted D.R.'s lack of compliance with medication and his threats to staff about being poisoned. The provider testified D.R. would be at risk of harm to himself out in the community. Based on the provider reports, filings, and the testimony heard, we find the court did not err in finding D.R. posed a threat to himself or others.

We conclude the district court's finding that D.R. was seriously mentally impaired is supported by substantial evidence.

**AFFIRMED.**