# IN THE COURT OF APPEALS OF IOWA

No. 22-0940
Filed April 12, 2023

**IN THE INTEREST OF L.H.,**
**ALLEGED TO BE SERIOUSLY MENTALLY IMPAIRED,**

**L.H.,**
　　Respondent-Appellant.
_____

　　Appeal from the Iowa District Court for Lee (North) County, Ty Rogers, District Associate Judge.


　　A respondent appeals his civil commitment.  **AFFIRMED.**


　　William (Bill) Monroe, Burlington, for appellant.

　　Brenna Bird, Attorney General, and Chandlor Glenn Collins, Assistant Attorney General, for appellee State.


　　Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**PER CURIAM.**

L.H. appeals a district court order continuing his civil commitment. He contends counsel was ineffective for failing to move to recuse the judge, failing to object to a periodic report, and failing to adequately challenge his commitment.[1] He also challenges the sufficiency of the evidence. We find counsel was not ineffective. Sufficient evidence supports L.H.'s continued commitment. We affirm.

**I.      Background Facts & Proceedings**

L.H. is serving a life sentence for murder. His conviction was affirmed on direct appeal in 2005. He has been civilly committed since 2013. *See In re L.H.*, No. 19-1888, 2020 WL 2988236, at *1 (Iowa Ct. App. June 3, 2020) (per curiam). He is diagnosed with schizophrenia and a delusional disorder with an erotomanic subtype. His mental illness causes him to engage in hypergraphia—excessive writing—which includes writing sexually explicit content to staff and other members of the public. He also has exposed himself and masturbated in front of prison staff. He most recently received a "major report" in January 2022 for sexual misconduct and sexual violence after he was discovered masturbating in front of a prison guard.

---

[1] Our supreme court has not held that a respondent subject to an involuntary commitment proceeding has a right to effective assistance of counsel. *See In re Det. of Crane*, 704 N.W.2d 437, 438-39 n.3 (Iowa 2005) (explaining that while the Sixth Amendment right to counsel "is not directly implicated" by civil commitments, because committees have a statutory right to counsel, "due process demands the appointed counsel provide effective assistance"). Our court has previously addressed this claim, determining that the right to effective assistance of counsel "appears to be consistent with precedent." *In re D.M.T.*, No. 11-0654, 2012 WL 1440230, at *2 (Iowa Ct. App. Apr. 25, 2012) (citation omitted). We elect to reach the merits of L.H.'s claims.

L.H. sent multiple pro se letters to the district court in the spring of 2022. In the letters, he claimed prison staff engaged in harassment directed toward him since 2007. He also alleged staff submitted false reports about him, resulting in his ongoing commitment. He asked to be transferred to a prison in Minnesota. He asserted that he did not need "this unlawful medication to function correctly in my everyday life." In a May 5, 2022, order, the court noted L.H.'s pro se letters were "nonsensical," but scheduled a hearing soon thereafter "to review the necessity of the current committal proceedings".

A review hearing was held on May 18, 2022. The State relied on the periodic report submitted on May 17, 2022, by the staff psychiatrist nurse practitioner under Iowa Code section 229.15 (2022). That report alleged L.H. was seriously mentally impaired, his condition had remained unchanged from the last review hearing, and identified the January 2022 report as a recent episode of dangerous behavior. L.H., through counsel, presented no evidence. The district court ordered L.H. to remain civilly committed. L.H. now appeals.

## II. Standard of Review

We review claims of ineffective assistance of counsel de novo. *Crane*, 704 N.W.2d at 438. "To succeed on an ineffective-assistance-of-counsel claim, a defendant must prove (1) trial counsel failed to perform an essential duty and (2) prejudice resulted." *Id.* at 439.

To the extent L.H. raises a free-standing claim challenging the sufficiency of the evidence, we review such claim for the correction of errors at law. *In re B.T.G.*, 784 N.W.2d 792, 796 (Iowa Ct. App. 2010). "The district court's findings of fact are binding upon this court if supported by substantial evidence. Evidence

is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.* (internal citation omitted).

## III. Judicial Bias

L.H. contends his counsel was ineffective for failing to move to recuse the judge. In its May 5, 2022 order, the court characterized L.H.'s pro se letters as "nonsensical in nature." Because those letters allege correctional staff fabricated reports about him that serve as the basis for his continued commitment, he alleges the court pre-decided the issue of his continued civil commitment.

We reject L.H.'s claim for two reasons. First, even though the May 5 order found L.H.'s letters nonsensical in nature, the court immediately thereafter issued an order scheduling a hearing "to review the necessity of the current committal proceedings." This suggests that the court did not dismiss L.H.'s complaints summarily. Instead, it suggests that the court, while not understanding L.H.'s filings because the court found them nonsensical, scheduled a hearing to give L.H. the opportunity to voice any concerns he had about continued commitment. As the court had not prejudged the issue, the court had no obligation to be recused and counsel was not ineffective for not requesting recusal.

Second, the supreme court recently summarized a judge's obligation to recuse themselves from a proceeding:

> "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned . . . ." Iowa Code of Judicial Conduct R. 51:2.11(A); *see also* Iowa Code § 602.1606(1)(a) (2020) ("A judicial officer is disqualified from acting in a proceeding . . . if . . . [t]he judicial officer has a personal bias or prejudice concerning a party."). The Iowa Code of Judicial Conduct, Terminology, defines impartiality as "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in

considering issues that may come before a judge." Actual prejudice must be shown before recusal is necessary, and speculation is not sufficient. *State v. Biddle*, 652 N.W.2d 191, 198 (Iowa 2002). The test is "whether reasonable persons with knowledge of all facts would conclude that the judge's impartiality might reasonably be questioned." *State v. Mann*, 512 N.W.2d 528, 532 (Iowa 1994). The party seeking disqualification must show that the judge's "alleged bias and prejudice must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case." *State v. Bear*, 452 N.W.2d 430, 435 (Iowa 1990).

*Carter v. Carter*, 957 N.W.2d 623, 643-44 (Iowa 2021) (alterations in original).

L.H. has failed to establish the district court's purported bias was based on extrajudicial sources that resulted in a decision premised on information not obtained through the court's participation in the case. Indeed, the alleged bias stemmed from L.H.'s own pro se filings, which he does not suggest the court should have ignored. The court considered his allegations, found them to lack credibility, and made a decision solely on the information the judge learned from the judge's participation in the case. *See id.* at 644. Because L.H. has not shown the court was improperly biased, his claim fails—counsel has no obligation to file a meritless motion. L.H. was not prejudiced by counsel's inaction.

## IV. Periodic Report

L.H. contends his counsel should have objected to the May 17, 2022 periodic report. He claims the report contains false information—specifically the allegation that he masturbated in front of staff on January 26, resulting in a major report of sexual misconduct and sexual violence. Consistent with prior pro se filings, L.H. asserts correctional staff filed false reports of his behavior.

L.H.'s counsel was not ineffective for failing to object to the report. L.H. identifies no grounds for challenging the report's admissibility. Periodic reports are

required by statute. *See* Iowa Code § 229.15. L.H.'s allegation that the report contains false information goes to its weight, not its admissibility. *See State v. Booth-Harris*, 942 N.W.2d 562, 576 (Iowa 2020) ("Most evidence can be called into question in some way; however, that does not give the . . . court the ability to preclude admission. We have cross-examination for a reason; evidence often is tested in that way.") (alteration in original) (quoting *State v. Roberson*, 935 N.W.2d 813, 828 (Wis. 2019)). L.H.'s counsel had no obligation to object because there was no basis for doing so.

## V. Sufficiency of Evidence

L.H. contests the sufficiency of the evidence supporting his commitment. A person may be involuntarily committed if they have a serious mental impairment, as defined in Iowa Code section 229.1(21). *See* Iowa Code § 229.6.

> The definition of serious mental impairment has three elements. The respondent must be found to have (1) a mental illness, consequently (2) to lack "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment" and (3) to be likely, if allowed to remain at liberty, to inflict physical injury on "the person's self or others," to inflict serious emotional injury on a designated class of persons, or be unable to satisfy the person's physical needs.

*In re J.P.*, 574 N.W.2d 340, 343 (Iowa 1998). The final element may now be proven by a fourth category, "a history of lack of compliance with treatment." Iowa Code § 229.1(21)(d). The State bears the burden of proving each element. *See In re L.H.*, 890 N.W.2d 333, 340 (Iowa Ct. App. 2016). "[T]o prolong a person's commitment, all three elements—mental illness, lack of judgment, and dangerousness, must continue to exist." *Id.*

L.H. does not appear to seriously contest the first two elements. He is diagnosed with "schizophrenia as well as a delusional disorder with an erotomanic subtype." The second element—lack of judgment—requires that the respondent "lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment." Iowa Code § 229.1(21). The nurse practitioner who submitted the most recent periodic report detailed how L.H. lacks insight on the inappropriate and harmful nature of his behavior, instead seeing it as a way to connect with others. In a pro se letter L.H. sent the court on January 25, 2022, he derided the "unlawful medication," asserting he did not need it to function. That sentiment is similar to his long-standing belief that he does not need medication, contradicted by medical staff who worked with him. In particular, the staff psychiatrist testified in a 2019 review proceeding that L.H.'s behavior worsens when he receives too low a dose of medication, and relayed L.H.'s statements suggesting he would stop taking medication if he were not committed.

L.H. challenges the last element. "We have said the endangerment element requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger. The danger the person poses to herself or others must be evidenced by a recent overt act, attempt or threat." *J.P.*, 574 N.W.2d at 344 (citations and quotation marks omitted). The district court found L.H. was likely to inflict serious emotional injury[2] on others if

---

[2] Iowa Code § 229.1(20) provides:

> "Serious emotional injury" is an injury which does not necessarily exhibit any physical characteristics, but which can be recognized and diagnosed by a licensed physician or other mental health professional and which can be causally connected with the act or omission of a person who is, or is alleged to be, mentally ill.

treatment ceased—in particular, the court identified staff members at the prison who could not avoid contact with L.H.

We find substantial evidence supports that assessment. L.H. received discipline in January 2022 for exposing himself and masturbating in front of a staff member. That conduct resulted in a major report for sexual misconduct and sexual violence. When he is not medicated or is under-medicated, his behavior worsens, resulting in L.H. sending highly explicit letters to staff members and other members of the public. Someone receiving those letters or witnessing L.H. masturbating is likely to endure a serious emotional injury. And L.H. will not comply with medication if not ordered to do so.

L.H. highlights that the only evidence demonstrating a recent overt act was the report from January 2022, which he claims was a false report. But the only evidence supporting his claim is his own pro se letters making conclusory allegations. And we, like the district court, find those allegations lack credibility. Evidence was sufficient to establish L.H. is seriously mentally impaired pursuant to chapter 229.

## VI.  Structural Error

L.H. claims his counsel committed structural error by failing to subject the State to adversarial testing. *See Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011). He highlights that the only evidence indicating a recent overt act causing serious emotional injury came from the January 2022 periodic report. And L.H. claims this periodic report relied on false reports from prison staff. He argues his counsel failed to adequately represent his position that the discipline report was premised

on false information.  He also generally asserts counsel failed to challenge the sufficiency of the evidence.[3]

"We have recognized structural error occurs when . . . counsel does not place the prosecution's case against meaningful adversarial testing . . . ."  *Id.*  "Under these circumstances, '[n]o specific showing of prejudice [is] required' as the . . . process itself is 'presumptively unreliable.'"  *Id.* (first and second alterations in original) (quoting *U.S. v. Cronic*, 466 U.S. 648, 659 (1984)).

Here, the hearing was short.  The State relied on the information provided in the May 18, 2022 periodic report.  Counsel for L.H. did not present any evidence.  But L.H. was allowed to speak to the court.  L.H. bears the burden of establishing counsel failed to subject the State to adversarial testing.  *See id.*  On the record before us, we do not find structural error.

## VII.  Cumulative Error

L.H. also asserts the culmination of all errors he identified warrants reversal.  It is well-settled law that "we analyze all claims 'individually and cumulatively'" when considering whether counsel was ineffective.  *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012) (citation omitted).  Because we conclude L.H. failed to establish counsel breached any essential duties, we do not address L.H.'s cumulative error claim.

**AFFIRMED.**

---

[3] L.H. further claims counsel committed structural error by failing to object to the admissibility of the report and to move to recuse the judge.  Because we have already found counsel was not ineffective in those regards, his claims fail here as well.